## UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JORGE OLIVARES** | * | **CIVIL ACTION NO.** |
| **Plaintiff** | * | |
| | * | |
| **v.** | * | **SECTION** |
| | * | |
| **NATIONAL RAILROAD PASSENGER** | * | |
| **CORPORATION a/k/a AMTRAK, BNSF** | * | **JUDGE** |
| **RAILWAY COMPANY, AND** | * | **MAGISTRATE** |
| **CIMARRON CROSSING FEEDERS, LLC** | * | |
| **Defendants** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Jorge Olivares, a person of the full age of majority and resident of the County of Los Angeles, State of California, who respectfully represents:

### I.   PARTIES

1.      The above identified Jorge Olivares will hereinafter sometimes be referred to as "Plaintiff" throughout the remainder of this document. Each reference to "Plaintiff" or allegation by "Plaintiff" shall also include his wife, Veronica Fuentes, on whose behalf he hereby asserts a loss of consortium claim.

2.      Defendant National Railroad Passenger Corporation d/b/a Amtrak (hereinafter "Amtrak") is a foreign corporation, duly organized and existing under the laws of the District of Columbia, with its principal place of business in the District of Columbia, and doing substantial business in the State of Kansas. Pursuant to federal law, Amtrak may be served by certified mail addressed to the Secretary of Amtrak, 60 Massachusetts Avenue Northeast, Washington, D.C. 20002.

3.      At all times pertinent hereto, all employees of Amtrak were acting in their

individual capacity and also as agents of Amtrak, within the scope of their employment and authority, and in the furtherance of the business of Amtrak. All the acts and omissions of the employees of Amtrak are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendant liable in its individual capacity.

4.     Defendant BNSF Railway Company (hereinafter "BNSF") is a foreign corporation duly organized and existing under the laws of the State of Texas, with its principal place of business in Texas, and doing substantial business in the State of Kansas. BNSF may be served with process through its registered agent, The Corporation Company, Inc., 112 SW 7th Street Suite 3C, Topeka, Kansas 66603.

5.     At all times pertinent hereto, all employees of BNSF were acting in their individual capacity and also as agents of BNSF, within the scope of their employment and authority, and in the furtherance of the business of BNSF. All the acts and omissions of the employees of BNSF are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendant liable in its individual capacity.

6.     Defendant Cimarron Crossing Feeders, LLC (hereinafter "Cimarron") is a Kansas Limited Liability Company, with its principal place of business in Cimarron, Gray County, Kansas.  Cimarron may be served with process through its registered agent, David Hilker, 300 Avenue B, Cimarron, Kansas 67835.

7.     At all times pertinent hereto, all employees of Cimarron were acting in their individual capacity and also as agents of Cimarron, within the scope of their employment and authority, and in the furtherance of the business of Cimarron. All the acts and omissions of the employees of Cimarron are imputed to their employer, who is liable for such acts and omissions, as well as rendering the individual Defendant liable in its individual capacity.

## II.  JURISDICTION AND VENUE

8.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1349 as the United States is the owner of more than one-half of Amtrak's capital stock.

9.      Venue is proper in this Court as the incident giving rise to this litigation occurred in the State of Kansas.

10.     All allegations set forth in this Complaint are based upon information and belief.

11.     All allegations set forth in each of the paragraphs in this Complaint are incorporated by reference into each of the other sections and paragraphs contained in this Complaint, as if fully set forth therein.

12.     At all times pertinent hereto, the Amtrak train of which Plaintiff was a crew member was operating on tracks under control by Defendant Amtrak or its agents or assigns.

13.     At all times pertinent hereto, Defendant Amtrak was an interstate carrier by rail and was engaged in interstate transportation and commerce. Plaintiff, Jorge Olivares, was employed by Defendant Amtrak as an on board service attendant, and as such was working and engaged in interstate commerce and transportation at the time set forth herein and said work directly, closely, and substantially affected the general interstate commerce carried on by Defendant Amtrak.

14.     Plaintiff's rights and remedies against Defendant Amtrak arise under the Federal Employer's Liability Act, 45 U.S.C. §51, *et seq.* ("the FELA"), and the jurisdiction of this Honorable Court exists under the provisions of the FELA.

## III. FACTS AND ALLEGATIONS

15.     In the early hours of Monday, March 14, 2016, Plaintiff was on board an eastbound Amtrak train (hereinafter "Accident Train") that was traveling through Gray County,

Kansas. The Accident Train is commonly referred to as the "Southwest Chief" and originated in Los Angeles, California, with its destination in Chicago, Illinois.

16.    Amtrak owned and operated the Accident Train, and the railroad tracks were owned and maintained by Defendant BNSF.

17.    The BNSF tracks which the Accident Train was operating over run in a generally east-west direction through Cimarron, Gray County, Kansas.

18.    West of Cimarron, the BNSF track is paralleled on both sides by highways. U.S. Highway 50 runs parallel to the north side of the BNSF tracks.

19.    There is no fencing or other protective barriers between the BNSF tracks and U.S. Highway 50 to prevent vehicles from entering BNSF's right-of-way or its track.

20.    There are approximately ten trains that operate over this section of BNSF track on a daily (24 hour) basis.

21.    Defendant Cimarron owns and operates a cattle feeding facility west of Cimarron, Kansas and north of U.S. Highway 50, in the general location where the incident giving rise to this litigation occurred.

22.    The Cimarron cattle feeding facility sits atop a hill, resulting in a steep decline from the facility to U.S. Highway 50.

23.    At approximately 9:00 a.m. on March 13, 2016, Cimarron employees were loading a truck owned and operated by Cimarron.    The Cimarron employees left the truck unattended, out of gear, and without any brakes applied. That truck rolled downhill to the south, crossed over U.S. Highway 50, and struck the BNSF rail tracks, causing damage to the tracks.

24.    Cimarron retrieved the truck that struck the BNSF rail track at some point in time on March 13, 2016.

25.    For over twelve hours, the track structure which had been damaged by the Cimarron truck remained in a defective condition, violating federal regulations, industry standards, and the railroad's own rules.

26.    At approximately 12:02 a.m. on March 14, 2016, the Accident Train proceeded over the defective track, applied its brakes, and violently derailed the last six cars of the Accident Train (hereinafter "Derailment").

27.    The violent Derailment caused serious injury to Plaintiff.

### IV. SPECIFIC COUNTS

**COUNT 1 - GENERAL LIABILITY ISSUES COMMON TO ALL DEFENDANTS**

28.    Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

29.    Defendants have a duty to exercise reasonable care to avoid injuring or killing members of the public. In this case, Defendants breached their duty by failing to exercise reasonable care.

30.    As a direct proximate result of the Defendants' breach of this duty, Plaintiff suffered damages, as alleged in the Damages portion (Section V) of this Complaint. All acts or omissions of Defendants constitute negligence, gross negligence, negligence *per se,* willful and wanton conduct, recklessness, intentional conduct, and demonstrate a reckless and intentional disregard for the safety of the traveling public.

WHEREFORE, Plaintiff prays for judgment on Count 1, and each and every other Count of this Complaint, in his favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein,

and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

## COUNT 2 - NEGLIGENCE OF AMTRAK

31.    Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

32.    Under the FELA, Amtrak had a duty to provide its employee, Plaintiff herein, a reasonably safe place in which to work.

33.    Under the FELA, Amtrak also had a duty to operate the train at a speed safe for the then existing conditions and be prepared to slow or stop for any hazards.

34.    Under the FELA, Amtrak had actual and/or constructive notice of the dangerous and defective condition of the rail tracks in sufficient time prior to the Accident to have taken appropriate preventive measures, but failed to do so.

35.    The Derailment described in this Complaint is a direct and proximate result of Amtrak's negligence, reckless disregard, and/or willful and wanton conduct in:

      a)  Failing to keep a proper lookout prior to the Derailment;

      b)  Failing to slow or stop the train to avoid "a specific, individual hazard" prior to the Accident and/or failing to approach the Derailment site prepared to stop due to "an essentially local safety hazard;"

      c)  Failing to immediately apply the emergency brakes;

      d)  Failing to adequately instruct, train and test members of the operating department in the safe operation of its trains;

      e)  Failing to warn of an unsafe condition;

      f)   Operating the train at an excessive and high rate of speed unsafe for the local safety conditions;

      g)   Failing to provide Plaintiff a reasonably safe place to work; and

      h)   Failing to take reasonable measures given the then existing circumstances.

36.    Amtrak was otherwise careless and negligent and/or grossly negligent as such facts are discovered during discovery in this litigation.

37.    As a legal result of Amtrak's wrongful conduct as alleged herein, Plaintiff suffered damages herein as alleged in Section V of this Complaint.

WHEREFORE, Plaintiff prays for judgment on Count 2, and each and every other Count of this Complaint, in his favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein, and attorneys' fees, together with post-judgment interest, and other relief as the Court deems just and proper.

## COUNT 3 - NEGLIGENCE AND GROSS NEGLIGENCE AND NEGLIGENCE *PER SE* OF BNSF

38.    Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

39.    BNSF is responsible for inspecting, maintaining and repairing the rail tracks where this Derailment occurred to ensure it is in a safe and proper condition.

40.    The Derailment described in this Complaint is a direct and proximate result of BNSF's negligence, gross negligence, negligence *per se,* reckless disregard, and/or willful and wanton conduct in:

      a)   Failing to properly inspect the rail track where this Derailment occurred

pursuant to federal regulations, 49 C.F.R. §213.233; state regulations, and BNSF's own rules created pursuant to such regulations;

b) Failing to properly maintain and/or repair the rail track where this Derailment occurred;

c) Failing to properly identify, document, report, and/or repair the hazardous track condition where this Derailment occurred;

d) Failing to properly warn the Accident Train of the improperly maintained rail lines where this Derailment occurred;

e) Failing to have adequate and reasonable safeguards in place to notify the Accident Train in a timely manner of the deficient rail lines where this Accident occurred;

f) Failing to have adequate and reasonable safeguards in place, such as a fence or other protective barrier to prevent vehicles from entering onto its property and damaging its tracks;

g) Ignoring the hazardous condition of the tracks where this Derailment occurred;

h) Failing to keep its track in compliance with federal regulations, 49 C.F.R. Part 213; state regulations, and BNSF's own rules created pursuant to such regulations;

i) Failing to halt rail operations over this track or place a speed restriction on this section of track, as required by federal regulations, 49 C.F.R. §§213.5 and 213.9; state regulations, and BNSF's own rules created pursuant to such regulations.

41.     BNSF was otherwise careless and negligent and/or grossly negligent as such facts are discovered during discovery in this litigation.

42.     As a direct and proximate result of BNSF's wrongful conduct as alleged herein, Plaintiff suffered damages, as alleged in Section V of this Complaint.

WHEREFORE, Plaintiff prays for judgment on Count 3, and each and every other Count of this Complaint, in his favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein, and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

### COUNT 4 - NEGLIGENCE AND GROSS NEGLIGENCE OF CIMARRON

43.     Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

44.     Cimarron owed a duty of reasonable care to Plaintiff.

45.     The Derailment described in this Complaint is a direct and proximate result of Cimarron's negligence, gross negligence, reckless disregard, and/or willful and wanton conduct in:

     a)   Failing to apply the brakes on its truck when it was left unattended;

     b)   Failing to properly secure and control its truck, so as to not allow it to roll away from the Cimarron facility, over U.S. Highway 50, and strike the rail tracks;

     c)   Failing to train its employees in the proper procedures for securing trucks during loading procedures;

    d) Failing to supervise employees to ensure they followed the proper procedures for securing trucks during loading procedures; and

    e) Failing to notify or warn any other entities that its truck struck and damaged the railroad tracks prior to the Accident.

46.    Cimarron was otherwise careless and negligent and/or grossly negligent as such facts are discovered during discovery in this litigation.

47.    As a direct and proximate result of Cimarron's wrongful conduct as alleged herein, Plaintiff suffered damages, as alleged in Section V of this Complaint.

WHEREFORE, Plaintiff prays for judgment on Count 4, and each and every other Count of this Complaint, in his favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein, and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

## COUNT 5 - INTENTIONAL DISREGARD FOR PUBLIC SAFETY BY ALL DEFENDANTS

48.    Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

49.    The conduct of BNSF, Amtrak, and Cimarron in all of the aforementioned allegations was willful and wanton, and demonstrated a reckless disregard for the safety of the traveling public. BNSF and Amtrak have intentionally elected to disregard legal duties owed to the traveling public and are also liable under K.S.A. §66-234.

50.    BNSF, Amtrak, and Cimarron have demonstrated a pattern of conduct of intentional disregard for public safety by failing to enforce their respective own policies and

procedures, as well as federal and state laws providing for the safety of the public. This pattern of conduct has condoned and ratified the conduct of its employees and agents to disregard duties owed to the traveling public.

51.     BNSF and Amtrak have made a deliberate decision that it will be cheaper to pay compensatory damages for claims resulting from train derailments than to properly maintain its tracks and dispatch systems. BNSF and Amtrak's conduct as set forth herein constitutes malice.

52.     As a direct and proximate result of BNSF, Amtrak and Cimarron's complete and intentional disregard for the safety of the traveling public as alleged herein, Plaintiff suffered damages, as alleged in Section V of this Complaint.

WHEREFORE, Plaintiff prays for judgment on Count 5, and each and every other Count of this Complaint, in his favor and against Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000.00, costs incurred and expended herein, and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

## V.  DAMAGES

53.     Plaintiff restates and realleges each and every other paragraph (and subparagraph) of this Complaint, including those paragraphs appearing above and below, and by this reference incorporates same as though fully set forth herein.

54.     As a direct and proximate result of the aforesaid acts and omissions of the Defendants, jointly and severally, Plaintiff was seriously injured as a result of blunt force trauma.

55.     As a direct and proximate result of the Defendants' negligence, gross negligence, negligence *per se,* recklessness, and/or wrongful acts, as set forth hereinabove, Plaintiff suffered severe, permanent and long-lasting injuries both economic and non-economic, including as

follows:

    a) The reasonable, usual and customary cost of the past, present and future medical care rendered to Plaintiff;

    b) The increased living and medical expenses caused by the injuries suffered as a result of the Derailment including, but not limited to the amount of increased expenses as determined by a life care planner, physician or economist;

    c) Lost wages and future earnings capacity;

    d) Past, present and future physical and mental pain and suffering;

    e) Past, present and future loss of enjoyment of life;

    f) Past, present and future loss of function of the body and mind;

    g) Past, present and future disability and psychological injuries;

    h) Past, present and future pain and suffering, disfigurement, inconvenience and loss of time;

    i) Loss of impairment of ability to perform services in the household and in discharge of domestic duties;

    j) Property damage; and

    k) In other respects as may be revealed though discovery or at trial.

56.    The negligence, gross negligence, negligence *per se,* willful and wanton conduct, recklessness, intentional conduct, and reckless and intentional disregard for the safety of the traveling public, of each of the Defendants, jointly and severally, as described hereinabove, was a direct and proximate cause of the Plaintiff's injuries and damages hereinabove alleged, and Plaintiff has been damaged as set forth above in an amount in excess of $75,000.00.

57.    The conduct of the Defendants rises to a level sufficient to warrant imposition of

punitive damages and at a later date, Plaintiff will seek permission from the Court to amend the Petition to include a claim for punitive damages.

## VI. DEMAND FOR JURY TRIAL AND RIGHT TO AMEND

58. Plaintiff demands a trial by jury on all causes of action.

59. Plaintiff specifically reserves the right to amend this Complaint.

## VII.    REQUEST FOR PLACE OF TRIAL

60. Pursuant to District Court of Kansas Rule 40.2, Plaintiff requests Kansas City, Kansas as the place of trial.

## VIII.   PRAYER

WHEREFORE, Plaintiff prays for judgment against the Defendants, jointly and severally, in a fair and reasonable sum for actual damages in excess of $75,000:00, punitive damages, costs incurred and expended herein, and attorneys' fees, together with prejudgment and post-judgment interest, and other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,

ROME, ARATA, BAXLEY & STELLY, L.L.C.

BY:  /s/ Blake G. Arata, Jr.
BLAKE G. ARATA, JR., # 1697
W. CHAD STELLY, # 21140
C. PERRIN ROME, III, # 17774
650 Poydras Street, Suite 2017
New Orleans, Louisiana 70130
Telephone: (504) 522-9980
Facsimile: (504) 522-9971
Email: barata@romearata.com
wcstelly@romearata.com
and

*/s/ Richard F. Lombardo*

**RICHARD LOMBARDO     #22326**
**MICHAEL F. BARZEE      #27217**
**SHAFFER LOMBARDO SHURIN, PC**
**2001 Wyandotte Street,**
**Kansas City, MO 64108**
**rlombardo@sls-law.com**
**mbarzee@sls-law.com**

*Counsel for Jorge Olivares*

**Please Serve:**

National Railroad Passenger Corporation
through Kansas Long Arm Statute
Secretary of Amtrak
60 Massachusetts Avenue Northeast
Washington, D.C. 20002

BNSF Railway Company
through its agent for the service of process
The Corporation Company, Inc.
112 SW 7th Street, Suite 3C
Topeka, Kansas 66603

Cimarron Crossing Feeders, LLC
Through its agent for service of process
David Hilker
300 Avenue B
Cimarron, Kansas 67835